# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

DOUGLAS PRESS, INC.,

   Plaintiff,

v.

INTERNATIONAL GAMCO, INC.,

   Defendant.

No. 00 C 7340
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

### I. Background

On November 20, 2000, Plaintiff Douglas Press, Inc. ("Douglas Press") filed a Complaint against Defendant Gamco International, Inc. ("Gamco") alleging infringement of United States Patent No. 5,046,737 ("the '737 patent"). The patent relates to a "pull-tab" game, constructed of paper and used primarily for charitable gaming. On December 9, 2004, a *Markman* hearing was held during which the parties elaborated on their earlier filed claim construction briefs. I now set about construing the disputed claims.

### II. Law Regarding Claim Construction

Claim construction is a matter of law for the court to decide. *Markman v. Westview Instruments, Inc.,* 517 U.S. 370 (1996). In order "to ascertain the meaning of claims, [the court] considers three sources: the claims, the specifications, and the prosecution history." *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995). These three sources are considered to be intrinsic evidence, as they are public records available for all to consult when determining the meaning and scope of a patent claim. *Vitronics Corp. v. Conceptronics, Inc.,* 90 F.3d 1576, 1582 (Fed. Cir. 1996). When the intrinsic evidence unambiguously describes the

scope of a patented invention, reliance on extrinsic evidence, such as expert testimony and treatises, is inappropriate. *Id.* at 1583.

Claim interpretation begins with the actual words of the claims. *Bell Communications Research v. Vitalink Communications Corp.,* 55 F.3d 615, 619-20 (Fed. Cir. 1995). Generally, the words, phrases, and terms in patent claims should receive their ordinary and accustomed meaning. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.,* 175 F.3d 985, 989 (Fed. Cir. 1999); *Renishaw PLC v. Marposs Societa' per Azioni,* 158 F.3d 1243, 1249 (Fed. Cir. 1998). The strong presumption in favor of the ordinary meaning may only be overcome when the patentee clearly sets forth a definition for a claim term in the patent specification. *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298, 1306 (Fed. Cir. 2003) (*citing Johnson Worldwide,* 175 F.3d at 989-90).

The patent specification is the first resource, beyond the actual words of the claims themselves, used to aid in claim construction. *Fromson v. Anitec Printing Plates,* 132 F.3d 1437, 1442 (Fed. Cir. 1997). In general, technical terms are deemed to have the same meaning in the claims as in the body of the specifications. *Id.* Additionally, I may review the specifications as an aid in determining the meaning of a claim term in the context of the entirety of the disclosed invention. *Interactive Gift Express, Inc. v. Compuserve, Inc.,* 231 F.3d 859, 866 (Fed. Cir. 2000). In looking to the specifications, however, the claims are not limited to the embodiment shown there. *Anchor Wall Sys.,* 340 F.3d at 1307; *Transmatic, Inc. v. Gulton Indus.,* 53 F.3d 1270, 1277 (Fed. Cir. 1995). Other limitations appearing only in the specifications cannot be read into a claim because "the claim, not the specification, measures the invention." *Howes v.*

*Zircon Corp.,* 992 F. Supp. 957, 961 (N.D. Ill. 1998) (*citing SRI Int'l v. Matsushita Elec. Corp.,* 775 F.2d 1107 (Fed. Cir. 1985)).

Each patent has a corresponding publicly available record called the prosecution history that details the proceedings before the Patent and Trademark Office ("PTO"). The prosecution history may limit the interpretation of claim terms to exclude any interpretation that was disclaimed during prosecution to overcome or distinguish the prior art. *Vitronics,* 90 F.3d at 1583. However, "unless altering claim language to escape an examiner rejection, a patent applicant only limits claims during prosecution by clearly disavowing claim coverage." *Kopykake Enters. v. Lucks Co.,* 264 F.3d 1377, 1382 (Fed. Cir. 2001) (quotation omitted). Any such disavowal "must be clear and unmistakable." *Anchor Wall,* 340 F.3d at 1037.

### III. Claim Terms Requiring Construction

The terms whose meanings are in dispute appear in claim 1 of the '737 patent. That claim is given below with the disputed terms in boldfaced type.

> A lottery-type game system providing multiple levels of play, comprising:
> a plurality of playing cards each of which can be purchased by game players for a predetermined price per playing card,
> each of said playing cards having a **plurality of groups of game symbols** displayed thereon, with each of said cards including selectively removable means for concealing the groups of game symbols thereon prior to purchase by a player, said means for concealing said game symbols being removed by the player after purchase for providing a first level of play, and
> **a master game card** for use in conjunction with said playing cards,
> at least one of said master game card and said plurality of playing cards having displayed thereon means for establishing the eligibility of a plurality of selected game players having playing cards displaying predetermined selected ones of said game symbols,
> said master game card including means for identifying at least one of said eligible players, and selectively removable means for **concealing said identifying means prior to establishing all of said eligible game players for providing a second level of play,**

> said master game card further including award identifying means comprising a **plurality of award values** displayed on said master game card, and **selectively removable means for concealing said award values**, so that said selected one of said eligible players can determine the award to be received by removing the concealing means associated with one of said award values for providing a third level of play.

('737 Pat. Col. 5, lines 1-40 & Col. 6, lines 1-4).

### A. A Plurality of Groups of Game Symbols

Gamco argues that the language of claim 1 requires each of the game's playing cards to contain a plurality of groups of game symbols and that no one symbol given alone indicates a win. The disputed language in the claim states that the "playing cards have a plurality of groups of game symbols displayed thereon, with each of said cards including selectively removable means for concealing the groups of game symbols." ('737 Pat. Col 6, lines 16-19). Douglas Press agrees that claim 1 requires each playing card to possess a plurality of groups of game symbols each containing a plurality of symbols. Douglas Press does not, however, agree that a single symbol is insufficient to indicate a win. Douglas Press reads the claim to allow a winner to be determined by a single symbol within the group. Since there is nothing in the claim language limiting winning indicators to groups of symbols, I find that one symbol present within the group of symbols on the concealed portion of the playing card can indicate a winner.

### B. A Master Game Card

The parties now agree that "a master game card" denotes the use of one integrated master game card per game.

### C. Plurality of Award Values

Gamco argues that zero should not be considered as an "award value" within the meaning of the '737 patent. Gamco claims this interpretation is supported by the specification, which

4

refers to the level three awards, other than the bonus award, as nominal in value: nominal in Gamco's opinion is not nothing.[1] ('737 Pat. Col. 4, line 36-40). Douglas Press, on the other hand, claims it is improper to read such a limitation from the specifications into the plain language of the claim. *See Howes,* 992 F. Supp. 957 (citation omitted). I agree. Logically speaking, zero constitutes a perfectly legitimate award value. It may not be the kind of an award a player looks forward to, but it is an award nonetheless.

Gamco also argues that having a plurality of award values requires a third level player to win an award. Again, this interpretation misses the mark. The word plurality implies the availability of awards with differing values; it does not guarantee an award greater than zero.

**D. Selectively Removable Means for Concealing Said Award Values**

Gamco argues that the language, "selectively removable means for concealing said award values," constitutes a means-plus-function limitation and imports the following restrictions on the claim: (1) the concealing means must take the form of flap-like portions, (2) only an eligible player, chosen at the second level, can win at the third level, and (3) each player who reaches the third level must reveal one and only one award value. A means-plus-function limitation permits a patentee to express an element in a combination claim as a means for performing a function, without reciting a structure, material, or act which performs the specified function. *Valmont Indus., Inc. v. Reinke Mfg. Co.,* 983 F.2d 1039, 1042 (Fed. Cir. 1993). Section 112 of the Patent Act provides the following guidance for interpreting claim elements expressed in means-plus-function terms:

---

[1] In addition, Gamco argues that this interpretation is supported by descriptions on Douglas Press's website. Since information from the website constitutes unwarranted extrinsic evidence, I do not consider it here.

> [a]n element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. §112 ¶ 6.

I turn first to whether "selectively removable means for concealing said award value" is a means-plus-function limitation. The Federal Circuit has found that use of the word "means" in a patent claim raises the presumption that the patentee has purposefully chosen to invoke § 112. *Kemco Sales, Inc. v. Control Papers Co.,* 208 F.3d 1352, 1361 (Fed. Cir. 2000). This presumption collapses, however, when the claim itself recites sufficient structure, material, or acts to perform the claimed function. *Cole v. Kimberly-Clark Corp.,* 102 F.3d 524 (Fed. Cir. 1996). Since the claim contains no such language, I find that the "means" stated here does impute a means-plus-function limitation for the selectively removable concealing means. I do not, however, extend the means-plus-function limitation to "said award value." The word "said," preceding the reference to "award value," confers on it the meaning, previously determined in this opinion, present throughout the claim.

Construction of a means-plus-function limitation involves two steps: identifying the claimed function and determining what structure if any is disclosed in the specifications corresponding to the claimed function. *Lockhead Martin Corp. v. Space Sys. /Loral, Inc.,* 249 F.3d 1314, 1324 (Fed. Cir. 2001). The function of the selectively removable concealing means stated here is to cover or hide from view multiple award values. In the specification, Douglas Press describes the concealing means as "flap like portions of upper ply [that] can be selectively removed" and other "scratch-off arrangements." ('737 Pat. Col. 3, line 37-42). Thus, I interpret

"selectively removable means for concealing said award values" to include structures using a flap-like portion and scratch-off materials to conceal award values as well as their equivalents.

As for Gamco's arguments that only an eligible player, selected at the second level, may remove the concealing means, Douglas Press agrees. The claim itself states that the person who can reveal the concealing means at the third level is "said selected one of said eligible players." ('737 Pat. Col. 6, line 1). The claim also indicates that the eligible players are selected during the second level of play. ('737 Pat. Col 6, lines 33-36). Thus, a plain and ordinary reading of the claim indicates that only players selected at the second level are eligible to play in the third level.

With respect to Gamco's argument that the claim requires each third- level player to reveal one and only one award value, the parties are in partial agreement. Douglas Press agrees that the third-level player must reveal an award value. Douglas Press does not agree, however, that the award need be revealed after removal of one concealing means. Instead, Douglas Press argues that the claim should be interpreted to include a game in which a player would have to remove a combination of concealing means to determine the value of his or her award. The claim itself states that the "player can determine the award to be received by removing the concealing means associated with one of said award values." ('737 Pat. Col. 6, lines 1-4). Since this language does not limit the removal to one concealing means per award, I interpret the claim to include a game in which multiple concealing means are associated with a single award.

**E. Establishing the Eligibility of a Plurality of Selected Game Players**

Douglas Press argues that claim 1 requires that the winning player(s) at the second level of play be predetermined, meaning that the winner must be determined before the game is

played.² Specifically, claim 1 requires a "master game card including means for identifying at least one of said eligible players, and selectively removable means for concealing said identifying means prior to establishing all of said eligible game players for providing a second level of play." ('737 Pat. Col. 5, lines 32-36). The corresponding structure disclosed in the written description and depicted in Figure 1 shows a concealing flap covering a numeric identifier in the upper, center portion of the master game card. A second-level player must remove the flap and check to see if the identifier on the master game card matches the one on his or her playing card. Since both the language of the claim itself and the specification suggest that a winner is determined and concealed prior to the time the game is played, I agree with Douglas Press's construction and find that the winner(s) of the second level of play must be determined and concealed before the game is played.

**F. Opportunity to Win an Award at the Second Level of Play**

Douglas Press claims that the '737 patent requires the second-level player have the opportunity to win an award. According to Douglas Press, it is the ability to win an award that creates a distinction between the three levels of play in the game. That is to say, without an award, the second level would blend into the third level. Gamco disagrees, arguing instead that the claim language requires only that the eligibility of the players for the third level of play be established at the second level. With respect to the second level of play, claim 1 provides: "said master game card further including means for identifying at least one of said eligible players, and selectively removable means for concealing said identifying means prior to establishing all of said eligible game players for providing a second level of play." ('737 Pat. Col. 5, lines 32-36).

---

² Gamco neither opposes nor adopts this claim construction in its papers.

The claim itself makes no mention of an award at the second level. This, Douglas Press argues, is not dispositive because the term "level of play" carries with it the requirement that a player have the opportunity to win an award and because the specification states that the eligible player at the second level "may automatically win a predetermined award." ('737 Pat. Col. 4, Lines 21-2).

When the game is viewed in context, it is clear that the distinguishing feature separating the levels of play is the opportunity to win an award. As Judge Coar has already found, "to not require the opportunity to win an award at the second level before advancing to the third level essentially would create artificial levels of play that would not conform to the specifications of the patent." *Douglas Press v. World Wide Press, Inc.,* No. 99 C 7539, 2002 U.S. Dist. LEXIS 6148 at *9 (N.D. Ill. Mar. 27, 2002). If the player at the second level did not have the opportunity to win an award, the sole purpose of the second level would be to determine the player's eligibility for the third level of play, making it, from the player's perspective, indistinguishable from the third level itself. Said another way, removing the award from the second level effectively eliminates the "play" from the second level of the game. Thus, I construe claim 1 of the '737 patent to require the opportunity for an eligible player to win an award at the second level of play.

**IV. Conclusion**

The term "plurality of groups of game symbols" as used in claim 1 of the '737 patent means the playing cards must contain two or more groups of game symbols in which one or more symbol(s) can indicate a winner. The term "a master game card" as used in claim 1 of the '737 patent means one single integrated master game card. The term "award values" as used in claim

1 of the '737 patent means values including zero. The term "selectively removable means for concealing said award values" as used in claim 1 of the '737 patent includes structures utilizing a flap-like portion or scratch-off materials to conceal award values and their equivalents. The term "establishing all of said eligible game players for providing a second level of play" as used in claim 1 of the '737 patent means that the winner(s) of the second level of play must be determined and concealed before the game is played. The term "second level of play" as used in the '737 patent means there is an opportunity for the player(s) to win an award at the second level of play.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: March 18, 2005